# APPELLATE DIVISION

OF THE

## SUPREME COURT

OF THE

## STATE OF NEW YORK

In the Matter of IDA A. FLAGLER, an Incompetent Person.
In the Matter of the Application of MARTHA M. MOHR for an
Allowance out of the Surplus Income of Said Incompetent.
CORNELIUS J. SULLIVAN and Others, Appellants; MARTHA M.
MOHR and Another, Respondents.*

First Department, March 2, 1928.

**Insane persons — allowance to relative out of surplus income — evidence
does not show that incompetent if sane would have made allowance —
allowances to referee, special guardian and attorney for petitioner.**

An allowance to the petitioner, a relative of the incompetent, out of the surplus
income of the incompetent was not justified for the evidence did not clearly
establish that the incompetent, if sane, would have made an allowance to
the petitioner.

While the evidence shows that there is a large surplus income and that the
petitioner, a second cousin of the incompetent is in needy circumstances, it also
appears that the incompetent saw the petitioner only once, that the petitioner
was then five years of age, that the incompetent had never given anything
to the petitioner or helped her in any way except that she did on a few occasions
send clothing to petitioner's mother and on rare occasions sent the mother
small sums of money, and that the incompetent, when sane, gave irregularly
and very sparingly to her relatives.

The allowance to the referee for his fees is reduced from $7,500 to $3,700; the
allowance to the special guardian of the incompetent is reduced from $4,500
to $500, and the allowance to the attorney for the petitioner is stricken out.

SEPARATE APPEALS by Cornelius J. Sullivan and another, as
committee of the property of Ida A. Flagler, an incompetent, and
by the next of kin of the incompetent, from an order of the Supreme

---

* Modifying 130 Misc. 375; modified, 248 N. Y. 415.

First Department, March, 1928. [Vol. 223

Court, entered in the office of the clerk of the county of New York on the 21st day of July, 1927.

*DeLancey Nicoll* of counsel [*Raymond D. Thurber* and *Gerald Donovan* with him on the brief], for the appellants Cornelius J. Sullivan and Guaranty Trust Company of New York.

*John G. Agar* of counsel [*Alfred Ely* and *Charles S. Ernst* with him on the brief; *Agar, Ely & Fulton,* attorneys], for the appellants, the next of kin of the incompetent.

*Emmanuel Lewin,* for the petitioner-respondent.

*Ralph F. Kane,* special guardian.

PER CURIAM. Separate appeals have been taken by the committee of the property of Ida A. Flagler, an incompetent person, and by the heirs and next of kin of said incompetent from an order of the Special Term of the Supreme Court confirming the report of a referee appointed to hear and take testimony of the respective parties and to report the same to the court with his opinion. This was an application upon the petition of a second cousin of said incompetent person, praying that a reasonable allowance be made to her from the surplus moneys of the estate of said incompetent to take care of the petitioner's necessities. The learned referee reported that in his opinion, under the evidence, if the incompetent person were competent and the condition of the petitioner were presented to her, she would grant the allowance asked, and reported that the application should be granted. The referee recommended that an allowance of thirty dollars per week and a sum sufficient to pay the taxes, assessments and interest on the mortgage on the house wherein the petitioner resided and necessary repairs thereon be made. The order appealed from, in all things, confirmed the report of the referee and awarded to the petitioner the sum of $1,560 yearly, payable in monthly installments from the date of the filing of the petition, and that the petitioner be awarded a further sum of $700 for the payment of taxes, assessments and unpaid interest on the mortgages and necessary repairs to the house in which the petitioner resides, and ordered and directed that out of the surplus income received by them, or their successors, the committee of the property of said incompetent and their successors in office pay to the petitioner the sums above specified. The order appealed from further ordered and directed the said committee to pay out of the surplus income of said incompetent to the said referee, for his fees in the proceeding, the sum of $7,500 and the further sum of $278.10 as his disbursements; that said

committee pay to the special guardian of said incompetent person appointed in the proceeding the sum of $4,500 for his services as special guardian, and the further sum of $134.30 for his expenses and disbursements herein; and that said committee pay to the attorney for the petitioner the sum of $3,500 as an allowance for counsel fees for his services as attorney for the petitioner in this proceeding, and the further sum of $350 for the expenses and disbursements of such attorney herein; that the attorney for the committee of the property of the incompetent be paid the sum of $84.30 for his expenses and disbursements in the proceeding; that the attorney for the next of kin of said incompetent person be paid the sum of $821.82 for expenses and disbursements in this proceeding.

The evidence presented to the referee disclosed that an account filed February 21, 1927, covering the year from January 12, 1926, to January 12, 1927, showed a capital balance on hand in the hands of the committee of said incompetent person of $11,377,169.33, from which for said year the committee received a gross income of $477,257.59. The incompetent person is incurably insane and was committed to a sanitarium on August 14, 1899. She has never made a will and will die intestate. The evidence disclosed and the referee found that the petitioner resides with her husband at Collingswood, N. J. Her husband is in poor health and out of work. The petitioner is without sufficient means to support herself or meet her living expenses. She has no means of support, save a small weekly amount which she is at present earning. The petitioner is a second cousin of the incompetent person, and is not one of her heirs or next of kin. It is conceded that there is no legal obligation on the part of the incompetent person to support or aid the petitioner. The petitioner asks that an allowance be made her from the surplus income received by the committee of said incompetent person upon the ground that if the incompetent were sane and knew of the situation of the petitioner she would grant the petitioner the allowance asked. The order appealed from, following the report of the referee, has directed the payment by the committee of the incompetent person of the sums aforesaid upon the ground that the incompetent person, if sane, would make the allowances granted. The theory upon which allowances have been made by the Supreme Court from the estates of incompetent persons to collateral relatives not next of kind of the incompetent from the surplus income of the incompetent is that the incompetent person would have made the allowances if sane. The rule under which allowances can be made is well stated in Corpus Juris (Vol. 32, p. 708) as follows: " Ordinarily the court will not make allow-

ances for the support of persons to whom the ward owes no duty of support where it is not established that the ward would have done so if sane, even though the estate is sufficiently ample; and this rule has been applied to collateral kindred. However, the court may make allowances out of the ward's surplus income for the support of persons whom he would naturally wish to support, although under no legal obligation to do so; and this rule also has been applied to collateral kindred. Great caution should be exercised in respect to making allowances to persons for whom the ward is not legally bound to provide; and in several cases it has been said that the practice ought rather to be narrowed than extended. The amount and proportions of such allowances, when made, are entirely within the discretion of the court. In all such cases the court should see what the ward would himself do if he were sane, and act accordingly."

In *Matter of Lord* (227 N. Y. 145, 149) Judge McLAUGHLIN, writing for a unanimous Court of Appeals, said: " All of the authorities, so far as I am aware, where allowances of this character have been made, are upon the theory that the lunatic would, in all probability, have made such payments if he had been of sound mind [citing cases] or where proceedings have been instituted to have it adjudged that the lunatic has been restored to health and to have the committee discharged."

We are of the opinion that no satisfactory proof was presented to the referee of any probability that the incompetent person, if sane, would grant the allowances made by the order appealed from. The evidence shows that the petitioner never saw the incompetent person but once in her lifetime, when the petitioner, as a child five years of age, was taken by an elder sister to call upon the incompetent person in the city of New York. The incompetent person never had any relations or contact with the petitioner, except on the single occasion of that call. So far as the evidence shows, she never saw her again. She made no gifts to her and never made her any allowances. Evidence was given at the trial that the incompetent person had, on a few occasions, given the petitioner's mother some castoff clothing from which dresses were reconstructed and worn by the petitioner and other members of her family. It also appears that the incompetent person, on three or four occasions, had made small gifts of money of from ten to twenty-five dollars each to the petitioner's mother, and that on rare occasions the incompetent had aided others of her relatives. These benefactions, however, were small in amount, temporary in their nature, and made at rare intervals. The evidence does not disclose that the incompetent person, while still

sane, was of a particularly generous nature, but, on the contrary, it appears that she was rather penurious and not given to rendering material assistance to her relatives. Prior to the birth of the petitioner, the evidence shows that on two or three occasions the incompetent made brief visits at the home of the petitioner's mother; that on these visits the incompetent person accompanied her own mother, who was a sister of the petitioner's grandmother. The record does not furnish, in our opinion, any convincing proof of any reasonable probability that the incompetent person, if sane, would make an allowance to the petitioner. That the estate of the incompetent is a vast one, yielding a large annual income beyond what is required for the comfort and support of the incompetent, and that the petitioner is in dire necessity of financial aid, are some of the circumstances properly to be considered upon the question of what the incompetent would do if sane. But we do not think such circumstances alone justify the court's making an allowance to the petitioner in the absence of proof of reasonable certainty that the incompetent, if sane, would make such allowance. There must be convincing proof, beyond the affluence of the incompetent's estate and the necessities of the applicant, that the incompetent person, if sane, would make the allowance asked for, to justify the court in making the allowance. It is not the province of the court to deal benevolently or charitably with the property of an incompetent person. We think there is an entire failure of sufficient proof to justify the order appealed from making the allowances to the petitioner. While the record is not clear as to the financial ability of the incompetent prior to her marriage, the evidence does show that for many years before she was declared incompetent she was possessed of ample means, but, notwithstanding that, her benefactions to her relatives were comparatively few, small in amount, and made at irregular intervals. The order appealed from, therefore, in so far as it makes allowances to the petitioner, should be in all things reversed.

We regard the allowance made to the referee for his services as excessive and beyond reason. It is fair to say that the learned referee made no claim for the allowance, and that the allowance of $7,500 as his fees was made by the court at Special Term without the referee's solicitation. According to the affidavit of the referee, parts of fifteen days were spent on the trial and in considering the evidence and in the preparation of the referee's report. We think the referee, who was appointed by the court and before whom was presented a considerable amount of testimony and who made a painstaking investigation of the question presented, should be allowed the sum of $3,700, and in addition the sum of $278.10

for his disbursements, as shown by his affidavit; and that an allowance to the special guardian of said incompetent person appointed by order of the court of $500 is sufficient compensation for his services, and that the said sum should be paid to the said special guardian, in addition to the sum of $134.30, expenses and disbursements incurred by him in this proceeding. We do not think the attorney for the petitioner should receive any allowance from the estate of the incompetent for his services herein or for disbursements incurred. We approve of the allowances for expenses made to the attorney for the committee of the property of the incompetent person, and to the attorneys for the next of kin of the incompetent by the order appealed from. The order appealed from should, therefore, be modified in accordance with this opinion, and as so modified affirmed.

Present — DOWLING, P. J., MERRELL, MARTIN, O'MALLEY and PROSKAUER, JJ.

Order modified in accordance with opinion, and as so modified affirmed. Settle order on notice.